UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| SUNNY KAUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:21-cv-00522-JAG |
| | ) |
| GOVERNMENT EMPLOYEES INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR JUDICIAL APPROVAL OF
SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE**

Plaintiff Sunny Kaur, individually and as Class Representative on behalf of twenty-one (21) conditionally certified opt-in FLSA Plaintiffs (together, "Plaintiffs") and Defendant Government Employees Insurance Company d/b/a GEICO ("GEICO"), (collectively, the Parties"), by and through their undersigned counsel, respectfully request that the Court approve the attached Settlement Agreement and Release ("Agreement", attached as Exhibit "1") resolving the above-captioned action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

The Parties seek this Court's approval of the settlement because claims under the FLSA, such as those released by Plaintiffs in the Agreement, may not be waived or released in this Circuit without approval of the U.S. Department of Labor or a court. *See* 29 U.S.C. § 216(c); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005), *vacated and remanded on other grounds*, 493 F.3d 454 (4th Cir. 2007); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 476 (D. Md. 2010).

For the reasons stated below, the Parties respectfully request that the Court find that the Agreement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and dismiss with prejudice Plaintiffs' herein alleged claims against GEICO, with prejudice.

1

### I.     BACKGROUND

In this action, Plaintiffs sought to recover unpaid wages and damages against GEICO arising from GEICO's alleged violations of the FLSA and the Virginia Wage Payment Act ("VWPA"). The following describes Plaintiffs' alleged facts and GEICO's primary legal and factual defenses:

- Plaintiffs were employed by GEICO as Telephone Claim Representative Is ("TCR I"), working out of GEICO's Fredericksburg, Virginia, Call Center.

- While employed at GEICO's Call Center, GEICO set Plaintiffs' standard work schedule as 8:30 AM and 4:30 PM, with a 45-minute unpaid lunch break daily and two paid 15-minute breaks per day.

- After the start of Covid in March of 2020, GEICO directed Plaintiffs to work from home.

- During the period relevant to this action, pursuant to GEICO's standard policies and practices, Plaintiffs were generally not permitted to work overtime without prior authorization and/or approval from GEICO and, absent such authorization and/or approval, Plaintiffs were directed by GEICO to not work over 7.75 hours a day or 38.75 hours a week.

- Plaintiffs allege that, pursuant to GEICO policies, directly enforced at the Supervisor level, Plaintiffs were generally not permitted by GEICO to claim overtime or record additional work above or beyond the standard 7.75 hour workday until GEICO revisited its policies sometime during the summer of 2021.

- Plaintiffs allege that, pursuant to GEICO Policies, if Plaintiffs reported, affirmed, or otherwise sought compensation for hours worked over 7.75 hours per day and/or 38.75

hours per week without prior authorization, GEICO would subject such employee to workplace discipline.

- During the relevant period, GEICO utilized a self-reporting time-keeping system whereby Plaintiffs reported and affirmed the accuracy of their compensable work hours to GEICO each week through the "Workday" timekeeping software.

- During the relevant period, Plaintiffs' self-reported and affirmed time reporting, as evinced by GEICO's Workday timekeeping documents, demonstrate Plaintiffs customarily worked and reported 7.75 hours per day and 38.75 hours per week.

- During the relevant period, GEICO's payroll documents evince that in instances Plaintiffs reported and/or affirmed compensable work hours in excess of 7.75 hours per day and 38.75 hours per week, GEICO paid Plaintiffs for all hours reported and affirmed and paid Plaintiffs at the time-and-one-half overtime premium rate for overtime work reported and affirmed over forty (40) hours per week.

- During the relevant period, Plaintiffs allege GEICO subjected Plaintiffs to strict requirements for completing a number of claims monthly, calling all parties involved with the claim within a certain time frame, closing claims and completing claim-related tasks within a certain time frame, and keeping their to-do list (or diary) under a certain amount of items daily.

- During the relevant period, Plaintiffs allege GEICO required all persons involved in a claim (customers, witnesses, attorneys) be called by Plaintiffs in a short time frame (2 hours for much of the period). Plaintiffs allege this policy required Plaintiffs to prioritize these calls instead of completing the other work needed on claims during the workday, resulting in Plaintiffs performing compensable duties on a daily basis during

- Plaintiffs' lunch period and before and after regularly scheduled work hours (i.e. more than 7.75 hours per day).

- During the period relevant to this action, Plaintiffs allege GEICO required Plaintiffs to close claims and perform other tasks on their to-do lists (diaries) regarding these claims within a certain number of days and to keep the total amount of pending tasks on their diaries under a certain maximum level. Plaintiffs allege GEICO set these work requirements and pressures but, at the same time, did not authorize Plaintiffs additional time to complete this work. Plaintiffs allege this policy resulted in Plaintiffs performing off-the-clock work (not reported in Workday), especially during the period of March 2020 to Summer 2021, simply to avoid negative employment consequences up to and including termination.

- Plaintiffs allege that GEICO, by setting Plaintiffs' excessive workload but, at the same time, not allowing Plaintiffs to record additional hours of work (for at least the period of March 2020 through the summer of 2021) and by discouraging the use of recording additional time as described above, GEICO created policies and practices, reinforced by supervisors and company culture, that it was better for Plaintiffs' career to stay quiet and allow GEICO to steal their hours/wages rather than speak up, complain about additional compensable work hours, and risk a poor workplace reputation, negative performance reviews, and additional negative workplace consequences.

- Plaintiffs allege that during the period relevant to this action, to meet GEICO's assigned work demands (and avoid discipline for recording unauthorized additional work hours), Plaintiffs customarily worked approximately 5-10 additional compensable hours per week.

- Notwithstanding the Workday timesheets generally denoting 7.75 hours per day and 38.75 hours per week for all Plaintiffs, Plaintiffs allege that at all times relevant, GEICO had actual knowledge the Workday time records and the content thereof was not accurate because: (i) for the time periods when Plaintiffs were in the GEICO offices, many GEICO supervisors and managers personally observed Plaintiffs working before and after customary work hours; (ii) some Plaintiffs had candid conversations with their GEICO supervisors regarding the fact that they were working additional hours to complete tasks; (iii) GEICO's IT systems and related electronic work-product tracking (regularly performed by GEICO supervisors and managers) demonstrated Plaintiffs performing work duties before and after regular work hours, as evinced by: (a) Plaintiffs sending work-related emails to supervisors, co-workers, GEICO customers, and third parties for work purposes outside of business hours; (b) Plaintiffs logged into and out of the virtual private network to complete their work each day, often outside of normal business hours; (c) Plaintiff used WEBEX or other related internal GEICO chat or messaging features in which Plaintiffs communicated between each other and with other GEICO employees and supervisors about work-related topics outside of business hours; (d) Plaintiffs appeared as "active" on WEBEX when working before or after hours, a status GEICO supervisors were able to see while logged into the system; (e) ATLAS, GEICO's internal case management system, which Plaintiffs frequently used, kept and recorded time/date stamps for all entries by Plaintiffs, showing work outside of business hours; and (f) Plaintiffs made work-related telephone calls and/or texts to supervisors, vendors, and customers outside of business hours.

- Additionally, Plaintiffs allege that during the relevant period, each frequently made observable progress on their diaries (to-do lists) in ATLAS outside of normal work hours.  In so doing, Plaintiffs allege GEICO supervisors would have to notice that Plaintiffs customarily completed tasks between the end of one workday and the start of the next workday, evincing work outside of business hours during a period when no additional work was being approved (or if during another period, additional work that the supervisor would have needed to prior approve).

- Notwithstanding the above, Plaintiffs acknowledge that each filled out, signed, affirmed, and submitted Workday time records each week denoting 7.75 hours per week.  To this end, Plaintiffs acknowledge for the purpose of reaching a settlement that it is reasonable to believe a jury will be skeptical of Plaintiffs now, years later, contending their own signed time records are not accurate.

- Further, Plaintiffs acknowledge, for the purpose of reaching a settlement, even if a jury believes Plaintiffs worked additional hours during the relevant period, it is not knowable how much additional time a jury will believe Plaintiffs worked or, more importantly, how many additional hours GEICO suffered or permitted Plaintiffs to work during the relevant period.

- In opposition to Plaintiffs' allegations, GEICO stresses that it responsible as an employer to pay wages only for hours it knew or suffered or permitted Plaintiffs to work each pay period.  To this end, if this matter were tried, GEICO will focus on the fact that Plaintiffs entered and affirmed the accuracy of their own time records through Workday and that Plaintiffs knew and understood GEICO's timekeeping and payroll policies.

- If this matter were tried, GEICO will contend either (i) Plaintiffs are not credible and/or should not be believed in this action and/or (ii) if Plaintiffs worked additional hours, GEICO did know of and did not suffer or permit the additional work - - and, as a consequence, GEICO should not be found liable for work duties Plaintiffs performed that GEICO know of and did not suffer or permit.

- Further, if this matter were tried, GEICO would stress that in the unprecedented COVID era, GEICO set up work-from-home timekeeping reporting systems that were objectively reasonable and intended for the purpose of fully compensating all employees, including Plaintiffs, for all compensable hours worked.

- Insofar as the Parties and their counsel understood the claims and legal and factual defenses of the Parties, the Parties mutually agreed to attempt to resolve Plaintiffs' claims through a Settlement Conference with the Court-appointed mediator, United States Magistrate Judge Mark R. Colombell.

- On May 26, 2022, the Parties met in person with Judge Colombell at the United States District Court for the Eastern District of Virginia (Richmond Division). At the Settlement Conference, GEICO produced data and summaries for each Plaintiff from its payroll documents and ATLAS Case Management System.

- The ATLAS data and summaries produced by GEICO broke each workday in the relevant period into fifteen (15) minute intervals. In the summaries, if any Plaintiff made and/or recorded any entry into the ATLAS system in any fifteen (15) minute block, the Plaintiff was credited with fifteen (15) minutes of compensable time. This analysis demonstrated an approximation of the total compensable hours each Plaintiff worked during the relevant period. This information was cross-referenced with each

Plaintiffs' payroll records, from which a summary was created by GEICO demonstrating the total number of hours Plaintiffs worked (if any) for which Plaintiffs were not fully compensated during the relevant period.

- GEICO's summary also demonstrated instances that Plaintiffs did, in fact, claim and report work hours over 38.75 per week, for which Plaintiffs were compensated by GEICO at their non-overtime regular hourly rate up to forty (40) hours and at their time-and-one-half premium overtime rate for overtime claimed and reported over forty (40) hours per week.

- Based upon GEICO's data analysis, GEICO's maximum unpaid wage exposure to Plaintiffs for the relevant period calculated to $41,855.43.

- Shortly after GEICO's production of its data and summary analysis, Judge Colombell adjourned the Settlement Conference, allowing Plaintiffs' counsel to confer with each Plaintiff about the data and analysis and to then reconvene for a second ZOOM mediation session on June 7, 2022, to continue the settlement dialogue.

- During the period between May 26, 2022, and June 7, 2022, Plaintiffs' counsel reviewed GEICO's data and analysis and discussed the same with each Plaintiff. In these discussions, Plaintiffs acknowledged the ATLAS data was generally reliable as an approximation of most of the hours Plaintiffs worked, but the data was incomplete and did not include a variety of daily compensable tasks GEICO knew of and/or suffered or permitted Plaintiffs to perform for the benefit of GEICO. To this end, Plaintiffs acknowledged Plaintiffs' initial estimations as to their daily and weekly compensable work hours should be re-calculated to a settlement range more closely resembling GEICO's ATLAS production and analysis.

- On June 7, 2022, the Parties met by ZOOM with Judge Colombell and continued the settlement negotiation. At the conclusion of this second meeting, and with substantial assistance from Judge Colombell, the Parties mutually agreed to a resolution of Plaintiffs' claims for unpaid wages, statutory damages, and attorney's fees and costs.

- The final resolution between the Parties included a payment by GEICO to Plaintiffs in the total amount of Forty-Four Thousand Dollars and Zero Cents ($44,000.00) and payment to Plaintiffs' counsel for attorney's fees and litigation expenses in the amount of Fifty-Six Thousand Dollars and Zero Cents ($56,000.00), for a full and final settlement of Plaintiffs' claims against GEICO in exchange for a lump sum payment of One Hundred Thousand Dollars and Zero Cents ($100,000.00).

- The final Settlement Amount is an amount Judge Colombell regarded as fair and reasonable given the factual and legal disputes between the Parties and was expressly recommended to the Parties by Judge Colombell during the June 7, 2022, settlement conference as a fair and reasonable resolution of Plaintiffs' claims against GEICO.

- The breakdown and allocation of the Settlement Amount, which is identified in Exhibit 1 to the Settlement Agreement, (i) represents approximately 105% of Plaintiffs' alleged unpaid wages as compared to GEICO's ATLAS data and summary; (ii) represents a recovery of approximately 70% of Plaintiffs' incurred attorney's fees and litigation expenses; (iii) was expressly authorized and agreed to by each Plaintiff; and (iv) was signed by Plaintiff Kaur and Plaintiffs' counsel as authorized representatives on behalf of Plaintiffs and by GEICO's agent and GEICO's counsel as authorized representatives on behalf of GEICO.

## II.  LEGAL STANDARD

"A court-approved stipulated judgment or settlement is an exception" to the general rule that the FLSA's "provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement." *Navarro v. Eternal Trendz Customs, LLC*, 2015 U.S. Dist. LEXIS 24828, at *3 (D. Md. 2015) (citations omitted). "Such a settlement may be approved provided that it reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "*Lynn's Food Stores* and similar cases recognize a role for less-than-full-value compromise in the FLSA settlement process" and "[t]hese compromises reflect the 'many factors [that] may be in play as the parties negotiate.'" *Lopez*, 748 F. Supp. 2d at 478 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

Although the Fourth Circuit "has not specifically identified the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth . . . in *Lynn's Food Stores*." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3 (citations omitted); *see also Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110, at *3-4 (D. Md. 2018) (same). As explained in *Navarro*, an FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." This analysis includes consideration of (1) whether there are FLSA issues actively in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorney's fees, if included in the agreement. These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employees are "represented by an attorney who can protect their rights under the statute." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3-4 (quoting *Lynn's Food Stores*, 679 F.2d at 1354) (other citation omitted); *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS

71110 at *4 (same). There is a "'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, *27 (E.D. Va. 2009) (quoting *Camp v. Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172, at *18 (E.D. La. 2004)), *adopted by* 2009 U.S. Dist. LEXIS 89129 (E.D. Va. 2009).

### III. THE COURT SHOULD APPROVE THE PARTIES' AGREEMENT

#### A. *A Bona Fide Dispute Exists As To The Amount, If Any, Of Unpaid Time*

"In determining whether a bona fide dispute over FLSA liability exists, the Court reviews the pleadings, any subsequent court filings, and the parties' recitals in the proposed settlement." *Ellis v. Panco Mgmt. of N.J., LLC*, 2017 U.S. Dist. LEXIS 156079, at *3 (D. Md. 2017) (citation omitted). Whether a plaintiff is entitled to overtime wages under the FLSA "is a fact-specific inquiry that is frequently at the heart of FLSA litigation." *Id.* at *3-4 (finding *bona fide* dispute where defendant initially contested plaintiff's position and does not admit liability in the settlement).

As detailed *supra*, Defendant disputes any potential liability and that Plaintiffs are or would be entitled to recover any unpaid wages or damages if this matter was tried. Thus, under the circumstance of the instant case, "there are genuine disputes with respect to all plaintiffs that support the concept of a negotiated settlement of FLSA claims." *See, e.g., Hernandez v. Choi*, No. 2014 U.S. Dist. LEXIS 1597766, at *8 (D. Md. 2014); *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248 at *5 (same); *see also Eguizabal v. Hu & Tan, Inc.*, 2018 U.S. Dist. LEXIS 21410, at *4 (D. Md. 2018) (finding bona fide dispute where the parties disagreed about whether any violations

occurred); *Ellis*, 2017 U.S. Dist. LEXIS 156079 at *3 (*bona fide* dispute where defendant contested liability initially and in settlement agreement).

### B. *The Settlement Is Fair and Reasonable*

"In assessing the fairness and reasonableness of the settlement agreement, the following factors should be considered: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the Plaintiff; (5) the opinions of counsel; and (6) the probability of Plaintiff's success on the merits and the amount of the settlement in relation to the potential discovery." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *5-6 (citing *Saman v. LBDP, Inc.*, 2013 U.S. Dist. LEXIS 83414, at *8 (D. Md. 2013)) (internal quotation and citations omitted); *see also Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *5 (same).

Here, the "parties devoted a significant amount of time to settlement negotiations which spanned months." *Ellis*, 2017 U.S. Dist. LEXIS 156079 at *4. These negotiations were extensive and involved direct arms-length negotiations between the Parties' counsel, with the assistance of a United States Magistrate Judge Mark R. Colombell acting as the Parties' mediator. The settlement was reached by the Parties with full knowledge of the details and viability of each Party's claims and defenses. Thus, "the parties had sufficient opportunity to 'obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial of this case.'" *Id.* at *4-5 (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89136 at *32).

Next, the Parties considered the posture of the case in reaching settlement. In evaluating the disputes of fact and law, the Parties expected more than twenty (20) depositions, significant

written discovery exchanges, engagement of expert witnesses to perform a forensic examination of the annual revenue of GEICO's electronic data and records, and ultimately the filing of decertification and dispositive motions. As such, were this matter not to settle now, this litigation would be thrust into a posture necessitating significant and costly discovery and motion practice and to a trial for which the outcome would be unknown to the Parties. The Parties agreed that the resolution at mediation was preferable to the Parties as compared to the continued costs, time and uncertainty of continued litigation.

Further, "[w]hen all parties are represented by counsel of their choice in connection with the negotiations that led to the Settlement, there is a presumption that the Settlement was not the product of fraud or collusion." *Melendez v. Declerq, Inc.*, 2016 U.S. Dist. LEXIS 78332, at \*13 (D. Md. 2016) (citing *Lomascolo*, 2009 U.S. Dist. LEXIS 89136 at \*32 (citation omitted)). Here, there is an absence of any credible evidence of fraud or collusion between counsel.

In reaching the settlement, the Parties relied on the knowledge and expertise of their counsel. In this matter, Plaintiffs and GEICO are represented by attorneys highly experienced in employment litigation, including collective-action wage and hour litigation. Based on this experience, and strongly considering the recommendations of Judge Colombell, the Parties' counsel recommended the settlement reached by the Parties as a resolution in the Parties' best interests and the Parties expressly accepted the settlement and their counsel's recommendations and the recommendations of Judge Colombell as demonstrated by the Signed Settlement agreement.

    **C.**    *The Proposed Attorneys' Fees are Reasonable*

Where a settlement agreement includes a provision for payment of attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is

any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *7-8 (citing *Saman*, 2013 U.S. Dist. LEXIS 83414, at *8-9 (D. Md. 2013)) (internal quotation marks omitted)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *9-10 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)).

In this case, the Agreement provides for payment of Fifty-Six Thousand Dollars and Zero Cents ($56,000.00) in attorneys' fees and litigation. This recovery represents approximately 70% of Plaintiffs' actual lodestar. *See* billing records and Affidavit of Plaintiff's counsel Gregg C. Greenberg attached hereto as Exhibit 2. Under this circumstance, the agreed-upon amount for attorneys' fee and cost recovery agreed to by the Parties is reasonable and supports Court approval.

## IV.   CONCLUSION

For the reasons stated herein, the Parties jointly request that the Court approve the Agreement and dismiss all claims with prejudice.

Respectfully submitted,

\_\_\_\_/s/ Gregg C. Greenberg_____
Gregg C. Greenberg, Bar No. 79610
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: (301) 587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiffs*

\_\_\_/s/\_\_Sharon S. Goodwyn_____
Sharon S. Goodwyn, Bar No. 28822
HUNTON ANDREWS KURTH LLP
500 East Main Street, Suite 1301
Norfolk, Virginai 23510
Phone: (757) 640-5300
Email: sgoodwyn@huntonak.com

*Attorney for Defendant*